PEOPLE *v.* COLLINS.

HOMICIDE—ASSAULT WITH INTENT TO COMMIT MURDER—EVIDENCE—
SELF-DEFENSE.

> In prosecution of defendant for assault with intent to commit
> murder of complaining witness when defendant was found in
> bedroom of apartment occupied by woman who had been di-
> vorced from complaining witness and who then expected to
> marry defendant, record *held*, to show there was no intention
> to commit murder, but that defendant was acting in self-
> defense (Act No. 328, § 83, Pub. Acts 1931).

Appeal from Recorder's Court of the City of De-
troit; Krause (Paul E.), J.    Submitted June 17,
1948.    (Docket No. 78, Calendar No. 44,035.)    De-
cided September 8, 1948.

Ben Collins was convicted of assault with intent to
kill and murder.    Reversed.

*Asher L. Cornelius,* for plaintiff.

*Eugene F. Black,* Attorney General, *James N. Mc-
Nally,* Prosecuting Attorney, and *Robert Newton
Smiley* and *Mark Friedman,* Assistants Prosecuting
Attorney, for the people.

BUTZEL, J.    Defendant Collins was convicted of as-
sault with intent to kill and murder one Henry W.

REFERENCES FOR POINTS IN HEADNOTES
26 Am. Jur., Homicide, §§ 133, 134, 605.
Right of self-defense as affected by the fact that the defendant
was in company with the assailant's spouse, 18 A.L.R. 1068.

Vohl, the complaining witness.* In January, 1947, he was sentenced to a term of not less than 3 nor more than 10 years without any recommendation. No bail has been asked for. The case was tried without a jury, and the main claim of error is that guilt was not proved beyond a reasonable doubt, or, as defendant's attorney claims on appeal, "the finding of guilt was against the great weight of the evidence." A careful reading of the record satisfies us that the judgment of conviction should be reversed.

The facts are most unusual. There can be no doubt but that the immorality of all of the parties immediately involved led up to the unfortunate incident that culminated in the assault. Helen Vohl, the direct cause of all the difficulties, had been previously married before she became the wife of Vohl. She and defendant Collins worked in a factory that manufactured war material. While Vohl was in the army, she and Collins became very good friends and, upon Vohl's return from the service, she secured a divorce on the grounds of extreme cruelty. Thus, at the time of the alleged crime he was no longer related to her. Neither was defendant Collins, whom she expected to marry. Collins met her from time to time and was invited to her apartment on the night in question. She, however, was on very friendly terms with her former husband, Vohl, and had furnished him with a key to her apartment.

On October 16, 1946, she and Collins were in a bedroom of the apartment at about 1:30 a.m. when Vohl unlocked the door of the apartment and entered. Vohl testified that it was dark, that he turned on a light in the kitchen, that he heard voices in the bedroom, and that he went to the bedroom door and tried to open it, but was unable to because someone was holding it shut from the inside. From the tes-

---

* See Act No. 328, § 83, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115–83, Stat. Ann. § 28.278).—REPORTER.

timony of Collins and Mrs. Vohl it appears that both of them were hanging onto the knob of the door. Vohl testified further that his former wife told him to go into the kitchen and that she would then come out. He states that he thereupon went into the kitchen· and that when his wife came out he immediately went to the bedroom to take his coat and hat off. He denied having made a statement that he intended to kill whoever was in the bedroom before entering it, although defendant testified that he did so. Mrs. Vohl corroborated Vohl's testimony in this respect, but she also corroborated defendant's testimony to the effect that she had told him to hide in a closet. When Vohl entered the bedroom, the men began attacking each other. Vohl weighed 180 pounds and was 39 years of age at the time, while Collins was six years his senior and only weighed 142 pounds. Collins pulled from his pocket a knife with a blade three inches long. He claims that he jabbed the knife at Vohl in self-defense. He made numerous lacerations, but fortunately none of them were deep enough to cause serious injuries. Collins ran out of the apartment, and upon seeing that his clothing was stained with blood, he immediately went to a police station and reported what had occurred. Vohl changed his shirt, went to the place where he lived, and from there was driven to a hospital by his landlord. After emergency treatment and stitching of his wounds, he was removed to Receiving Hospital, where he remained for two days, according to the doctor, although Vohl claims he remained there 3 or 4 days. Evidently Collins did not come away unscathed either, for his testimony is uncontradicted that he had some very bad bruises and that three stitches had to be made at the hospital to close up his wounds.

Collins testified that he acted wholly in self-defense, and that Vohl had threatened to kill him in

the first instance. Mrs. Vohl is evidently through with Collins and seems to be on very friendly terms with her former husband. She denied that Vohl had threatened to kill Collins, but she admits that she and Collins hung onto the door when Vohl tried to force it open. She stated that although she had met Vohl very frequently since the fracas, she never discussed the facts with him prior to the trial. Vohl admitted that he had been drinking that day, but said he was not intoxicated. Collins apparently has a good reputation, though he admitted that he had once been fined for interfering in a street fight in which a friend of his was engaged.

It would serve no useful purpose to further detail the facts in the case. A fair reading of the record shows that there was no intention to commit murder. Collins was put in fear of receiving great bodily injury, and he did what he could to defend himself. He even might have been the aggressor to a certain degree, but the circumstances are such that he had good reason to be thoroughly alarmed, and in our opinion the record discloses that Collins' acts of aggression were only such as he believed were necessary for his own self-defense. After a careful reading of the record we cannot help but come to the conclusion that the judge should have rendered a judgment of not guilty.

The judgment of conviction is reversed without a new trial.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, NORTH, DETHMERS, and CARR, JJ., concurred.